UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

In re:                                     )
                                           )   Chapter 11
APPLEJACK ART PARTNERS, INC.,              )
                                           )   Case No. 10-
          Debtor.                          )
                                           )

**STIPULATED BRIDGE ORDER AUTHORIZING LIMITED USE OF
CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

Upon the motion (the "Motion") dated July 6, 2010 of Applejack Art Partners, Inc., as debtor and debtor-in-possession herein (the "Debtor"), pursuant to, *inter alia*, sections 105, 361, 362(a), and 363(c) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking authorization for the Debtor to use Cash Collateral (as defined in the Bankruptcy Code) in which Berkshire Bank ("Berkshire") has a perfected first priority lien interest;

The Court having considered the Motion on limited notice and upon a stipulation agreed between the Debtor and Berkshire in accordance with Bankruptcy Rule 4001-2(c) and 4001-4 of the Vermont Local Bankruptcy Rules (the "Local Rules"); and it appearing to the Court that the relief requested by the Motion is in the best interests of the Debtor and its creditors and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED**

that:

1. *Jurisdiction*. This Court has core jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

2. *Consideration On Limited Notice and Scheduling of a Hearing and Further Notice*. Pursuant to Local Rule 4001-4 the Motion was considered and granted on limited notice at the request of the Debtor and Berkshire, and such consideration was appropriate in the circumstances of these cases so as to avoid immediate and irreparable harm to the Debtor's estate.

3. *Background*.

(a) Petition Date. On July 6, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case" or the "Case"). The Debtor is continuing in possession of its property, and operating and managing its business, as debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

(b) Need to Use Cash Collateral. The Debtor has an immediate need to use Cash Collateral. The Debtors do not have sufficient available sources of unencumbered working capital and financing to operate its business in the ordinary course of business. As of the Petition Date, the Debtor has requested permission to utilize cash collateral, and an interim hearing with regard to the postpetition financing has was held on July 7, 2010. Prior to entry of an order approving the final use of cash collateral, however, the Debtor requires the limited use of Cash Collateral in order to continue operating its business in the ordinary course and so as to avoid serious and

irreparable harm to the Debtor and its estate, which harm would occur if the Debtor were unable to use Cash Collateral as requested in the Motion.

(c) <u>Request for Immediate Entry of Order</u>. In order to avoid immediate and irreparable harm to the Debtor's estate that will occur if this Order is not immediately approved, the Debtor has requested that Berkshire permit the use of Cash Collateral for such operating purposes set forth in the Budget (as defined herein). In addition, the Debtor had requested immediate entry of this Order pursuant to Local Rule 4001-4.

(d) <u>Limited Consent</u>. Berkshire has consented to the use of Cash Collateral, but only to the extent such Cash Collateral is used in strict accordance with the terms and conditions of this Order, including but not limited to the operating purposes set forth in the Budget.

(e) <u>Good Cause for Entry of the Order</u>. Good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the Debtor's business and operations and permit it to meet payroll and other operating expenses, obtain needed supplies and retain customer and supplier confidence by demonstrating an ability to maintain normal operations. In accordance with Local Rule 4001-4, the permission to use Cash Collateral hereunder has been limited to the amount necessary to avoid immediate and irreparable harm to the Debtor's estate pending final hearing on notice.

(f) <u>The Prepetition Financing</u>. Pursuant to the Prepetition Loan Agreement and related documents (the "<u>Prepetition Loan Documents</u>"), the Debtor acknowledges and agrees that it granted to Berkshire certain liens and security interests in

a variety of forms of collateral, including, without limitation, collateral that constitutes "Cash Collateral" as defined in section 363 of the Bankruptcy Code (with all such collateral being referred to herein as the "Prepetition Collateral" and the liens thereon being referred to as the "Prepetition Liens"). The Prepetition Loan Documents are more particularly described on the attached Schedule A, together with the amounts due on each of the Prepetition Obligations. The Debtor acknowledges and agrees that it is obligated to Berkshire pursuant to the Prepetition Loan Documents as of the Petition Date, in the amounts described on the attached Schedule A (the "Prepetition Obligations").

(g) Basis for Adequate Protection. Berkshire is entitled to receive adequate protection pursuant to sections 361, 362, 363 of the Bankruptcy Code, to the extent any amounts under the Prepetition Loan Documents remain outstanding, for any diminution in the value of the Prepetition Collateral resulting from the Debtor's use, sale or lease of such Prepetition Collateral, including Cash Collateral, during the Chapter 11 Cases.

4. *Authorization for Limited Use of Cash Collateral.* The Debtor is authorized to use Cash Collateral solely for the period (the "Specified Period") from the Petition Date through and including November 1, 2010. The right of the Debtor to use Cash Collateral shall terminate upon the earliest to occur of: (a) expiration of the Specified Period, (b) failure of the Debtor to comply with any of the terms or conditions of this Order, (c) the dismissal or conversion of this case to a case under Chapter 7 of the Bankruptcy Code, or the appointment of a trustee under Chapter 11 of the Bankruptcy Code, or (d) a final order authorizing the use of Cash Collateral substantially in accordance with the terms of this Order or otherwise acceptable to Berkshire in its sole

discretion is not entered.  Except as otherwise expressly provided herein, Cash Collateral may be used during the Specified Period solely up to the amounts, at the times and for the line items identified in the cash collateral budget (the "Budget") attached as Schedule B; provided that, in addition to the restrictions of the Budget, during the Specified Period, the Debtor shall not use Cash Collateral in an amount exceeding an aggregate total of $1 million for a three month period.

     5.     Adequate Protection Payments.  The Debtor shall pay to Berkshire on an ongoing basis, during the Specified Period, commencing on August 6, 2010, then on September 6, 2010, and October 6, 2010, monthly principal payments in the amount of $20,000 each, together with monthly payments of interest on all amounts due pursuant to the Prepetition Loan Documents.  These estimated monthly interest payments are $7,430.00 each.  Additionally, as further adequate protection payments, within two (2) business days from the date of this Order, MacGaw Graphics, Inc. will execute and deliver to the Berkshire a promissory note in the amount of $30,000, together with interest at the rate of 5% per annum, due and payable in full on November 1, 2010.

     6.     *Adequate Protection Liens*. As adequate protection to Berkshire for any diminution in the value of the Prepetition Collateral, including as a result of the Debtor's use of Cash Collateral for the Specified Period, effective immediately upon the execution of this Order, the Debtor hereby grants to Berkshire continuing, valid, binding, enforceable and automatically-perfected first priority postpetition replacement security interests, mortgages and other liens (collectively, the "Replacement Lien") senior to all other liens against the Debtor's estate on (i) all property of the Debtor's estates that was encumbered by the Prepetition Liens immediately prior to the Petition Date, subject to

valid, perfected and otherwise unavoidable liens existing as of the Petition Date, senior to the Prepetition Liens (the "Permitted Prior Liens"); and (ii) all property of the Debtor's estates that was not encumbered as of the Petition Date, and any proceeds and products therefrom, including, without limitation, insurance proceeds and the proceeds of any avoidance power claims or actions under section 549 of the Bankruptcy Code, but specifically excluding for purposes of this Bridge Order the proceeds of any claims or actions under sections 544, 547 or 548 of the Bankruptcy Code (the "Excluded Avoidance Actions"). The property described in clauses (i) and (ii) together with the Prepetition Collateral is collectively referred to herein as the "Collateral".

7. *Adequate Protection Claims*. As further adequate protection to Berkshire for the Debtor's use of Cash Collateral and any diminution in the value of the Prepetition Collateral arising on account of the Debtor's use thereof, Berkshire is hereby granted an allowed super-priority administrative expense claim (the "Bridge Super-Priority Claim") with priority over all administrative expense claims and unsecured claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 327, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b) (to the extent permitted by law), 1113 and 1114, provided, however, that the Bridge Super-Priority Claim shall not extend to the proceeds of Excluded Avoidance Actions.

8. *Automatic Perfection*. The security interests, liens and priority granted to Berkshire pursuant to this Order shall be fully perfected by operation of law upon execution of this Order by the Court such that no additional steps need be taken by the

Berkshire to perfect said security interests, liens and priority. Berkshire is not required to file financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or effect any other action to attach or perfect the liens granted under this Order.

9. *Continued Insurance & Cash Management*. Until the obligations of the Prepetition Loan Documents have been indefeasibly paid in full in cash, and notwithstanding the expiration of the Specified Period or any earlier termination of the Debtor's authorization to use Cash Collateral hereunder, the Debtor shall: (a) insure the Collateral in the amounts and for the risks, and by the entities, as required under the Prepetition Loan Agreement, and (b) maintain the cash management system in effect as of the Petition Date.

10. *No Waiver of Prepetition Rights*. Except as expressly provided for herein or by the Bankruptcy Code, nothing contained herein shall (a) constitute consent by Berkshire to the use of Cash Collateral other than as provided herein, or (b) obligate Berkshire to permit the use of Cash Collateral other than as provided herein or to advance funds to the Debtor for any reason, including, without limitation, for the payment of expenses of administration under the Bankruptcy Code.

11. *Limitation of Cash Collateral.* From and after the date of this Bridge Order and pending the entry of any subsequent orders, Cash Collateral shall not, directly or indirectly, be used to pay administrative expenses of the Debtor and its estate, except for those expenses that are expressly set forth in the Budget.

12. *Debtor's Restrictions*. The Debtor is enjoined and prohibited from, at any time during this chapter 11 case, granting mortgages, security interest or liens in the

Collateral or any portion thereof, to any other parties pursuant to Section 364(d) of the Bankruptcy Code or otherwise, which mortgages, security interest or liens are senior to or on a parody with the security interests or liens of Berkshire.

13. *Security Documents*. The Debtor shall execute and deliver to Berkshire all such agreements, financing statements, instruments and other documents as Berkshire may reasonably request to evidence, confirm, validate or perfect the liens and security interests granted herein.

14. *Waiver of Claims*. The Debtor waives and releases any and all claims known or unknown, against Berkshire existing as of the date hereof. The Debtor acknowledges that Berkshire will not be subject to the equitable doctrines of "marshaling" or "subordination" or any other similar doctrine with respect to any of the Collateral.

15. *Valid and Binding Agreements*. The Debtor acknowledges and agrees that, as of the Petition Date, the Prepetition Loan Documents are valid and binding agreements enforceable against the Debtor in accordance with their terms, and that the Prepetition Liens grant to Berkshire valid, enforceable, properly perfected, first priority security interests in the Prepetition Collateral.

16. *Termination of Cash Collateral Usage.* The Debtors' authorization to use Cash Collateral shall <u>terminate</u> upon the expiration of the Specified Period. Except as expressly provided herein, termination of the Debtor's authorization to use Cash Collateral hereunder shall not impair the continuing effectiveness and enforceability of all other provisions hereof.

17. *Survival of Provisions.*  The terms and provisions of this Cash Collateral Order with respect to the Replacement Lien and the Bridge Super-Priority Claim shall survive the entry of any order confirming a plan of reorganization, dismissing, or converting the Case into a case under Chapter 7 of the Bankruptcy Code, and the Replacement Lien and the Bridge Super-Priority Claim shall continue in the Case and in any such successor case, and shall maintain their priority as provided herein, until the Bridge Super-Priority Claim has been indefeasibly paid in full in cash, notwithstanding the expiration of the Specified Period or any earlier termination of the Debtor's authorization to use Cash Collateral.  The creation, scope, perfection and priority of the Replacement Lien and the Bridge Super-Priority Claim shall not be altered or impaired by any plan of reorganization which may hereafter be confirmed or by any further order which may hereafter be entered in the Case, without the express written consent of the Berkshire.

18  *Good Faith Reliance*.  Berkshire has acted in good faith in connection with this Cash Collateral Order, and is entitled to the full protection of Section 364(e) of the Bankruptcy Code.  If any provision of this Order is hereafter modified, vacated or stayed by subsequent order of this or any other Court for any reason, such modification, vacatur, or stay shall not affect the validity, perfection, priority, or enforceability of the Replacement Lien or Bridge Super-Priority Claim granted by the Debtor herein.

19. *Certain Rights Preserved*.  Berkshire's failure to seek relief or otherwise exercise remedies under the Prepetition Loan Documents or the Order shall not constitute a waiver of any of its rights hereunder, thereunder, or otherwise.

20. *Nunc Pro Tunc Effect of this Interim Order*. This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

21. *Binding Effect*. The provisions of this Bridge Order shall be binding upon and shall inure to the benefit of Berkshire, its successors and assigns, and the Debtor and its successors and assigns, including any trustee or other fiduciary hereafter appointed in this bankruptcy case, whether in chapter 11, chapter 7, or otherwise, as a legal representative of the Debtor or its estate.

22. *Payment in Full*. The Debtor shall file a plan of reorganization and disclosure statement that provide, among other things, for the payment in full of any and all amounts then due to Berkshire.

23. *Party-In-Interest Status*. Berkshire shall be deemed to be a party-in-interest for all purposes in this chapter 11 case with the right and opportunity to appear and be heard on all matters arising in the bankruptcy case including, without limitation: (a) employment and payment of professionals by the Debtor's estate; (b) the sale of any estate property; (c) any plan of reorganization proposed in the case; and (d) any proposed conversion or dismissal of the case.

24. *Access to Debtor's Estate*. Without limiting the rights of access and information afforded Berkshire under the Loan Documents, the Debtor shall provide representatives, agents and/or employees of Berkshire access to the Debtor's premises and its records and shall otherwise cooperate, consult with, and provide to such persons all such non-privileged information and information not subject to a binding

confidentiality agreement, as they may reasonably request.  The Debtor also shall provide to Berkshire, at the time filed or provided, all statements, schedules, or financial reports which the Debtor files in the Bankruptcy Case or provides to the United States Trustee, in accordance with applicable Bankruptcy Rules, local bankruptcy rules, or guidelines of the United States Trustee.  Berkshire shall be authorized to conduct audits of its collateral, and the Debtor shall provide Berkshire's auditor's with reasonable cooperation to enable Berkshire to properly complete the audit.

25. *Debtor's Financials*.  The Debtor shall provide and deliver to Berkshire: (a) monthly Financial and Collateral Reports; (b) a monthly report comparing actual income and expenses to budgeted income and expenses for the preceding month and cumulative from the Petition Date.  The Debtor shall also timely file all operating reports in accordance with U.S. Trustee guidelines and promptly provide copies of those report(s) to DA.  On or before August 24, 2010, the Debtor shall provide to Berkshire copies of its 2009 federal and state income tax returns, with an officer's certification that they are true and accurate copies of the documents filed with the respective taxing authorities.

26. *Service of Bridge Order*.  The Debtor shall serve a copy of the Bridge Order entered July 22, 2010 on all persons entitled to service of the same.

27. *Retention of Jurisdiction*.  The Court has and will retain jurisdiction to enforce this Order according to its terms.

Dated: _____ \_\_\_, 2010
      _____, _____

                      _____
                      HON. COLLEEN A. BROWN
                      UNITED STATES BANKRUPTCY JUDGE

**AGREED TO AND ACCEPTED BY**

Raymond J. Obuchowski (Bar ID 000502389)
Jennifer Emens-Butler (Bar ID 000845663)
OBUCHOWSKI & EMENS-BUTLER
P.O. Box 60, 1542 Vt. Rt. 107
Bethel, Vermont 05032
802-234-6244

By:  via e-consent
  Jennifer Emens-Butler

**ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION**


Douglas J. Wolinsky, Esq.
Primmer Piper Eggleston & Cramer PC
150 South Champlain Street
P.O. Box 1489
Burlington, VT  05402-1489
802-864-0880

By:  via e-consent
  Douglas J. Wolinsky

**ATTORNEYS FOR BERKSHIRE BANK**

## SCHEDULE A

### PRE-PETITION LOAN DOCUMENTS AND
### AMOUNTS DUE ON PREPETITION OBLIGATIONS

1. On March 23, 2007, the Borrower executed and delivered to the Bank a Note in the original principal amount of Four Hundred Thousand Dollars ($400,000.00) which was increased to Seven Hundred Fifty Thousand Dollars ($750,000.00) by a Change in Terms Agreement executed and delivered by Borrower to Bank on March 11, 2008 and further increased to One Million Dollars ($1,000.000.00) by a Change in Terms Agreement executed and delivered by Borrower to Bank on May 29, 2008 (as modified, the "Line of Credit Note"). As of the Petition Date, the amounts due under Line of Credit Note are as follows:

| | |
|---|---|
| Principal: | $ 997,658.11 |
| Interest: | $ 5,320.85 |
| **Total:** | **$1,002,978.96** |

2. On March 23, 2007, the Borrower executed and delivered to the Bank a Note in the original principal amount of Eight Hundred Thirty-Seven Thousand Seven Hundred Dollars ($837,700.00) ("Term Loan 1 Note"). As of the Petition Date, the amounts due under the Term Loan 1 Note are as follows:

| | |
|---|---|
| Principal: | $625,933.53 |
| Interest: | $ 2,190.78 |
| **Total:** | **$628,124.31** |

3. On July 12, 2007, the Borrower executed and delivered to the Bank a Note in the original principal amount of One Hundred Fifty Thousand Dollars ($150,000.00) ("Term Loan 2 Note" and, together with the Term Loan 1 Note, the "Term Loan Notes").

As of the Petition Date, the amounts due under the Term Loan 2 Note are as follows:

| | |
|---|---|
| Principal: | $ 101,975.86 |
| Interest: | $      545.29 |
| **Total:** | **$ 102,521.15** |

4.	On March 23, 2007, the Borrower executed and delivered to the Bank a Commercial Security Agreement (the "Line of Credit Note Security Agreement"). Pursuant to the terms of the Line of Credit Security Agreement, the Borrower granted the Bank a security interest in its assets defined as Collateral (the "Line of Credit Note Collateral") in the Line of Credit Note Security Agreement as security for its obligations to the Bank pursuant to the Line of Credit Note.

5.	On March 23, 2007, the Borrower executed and delivered to the Bank a Commercial Security Agreement (the "Term Loan 1 Note Security Agreement"). Pursuant to the terms of the Term Loan 1 Note Security Agreement, the Borrower granted the Bank a security interest in its assets defined as Collateral (the "Term Loan 1 Note Collateral") in the Term Loan 1 Security Agreement as security for its obligations to the Bank pursuant to the Term Loan 1 Note.

6.	On July 12, 2007, the Borrower executed and delivered to the Bank a Commercial Security Agreement (the "Term Loan 2 Security Agreement" and, together with the Line of Credit Security Agreement and the Term Loan 1 Security Agreement, the "Security Agreements"). Pursuant to the terms of the Term Loan 2 Security Agreement, the Borrower granted the Bank a security interest in its assets defined as Collateral (the "Term Loan 2 Collateral" and, together with the Line of Credit Collateral and the Term Loan 2 Collateral, the "Collateral") in the Term Loan 2 Security Agreement.

7. The Bank's security interest in the Collateral pledged by the Security Agreements was perfected by the filing of Uniform Commercial Code Financing Statement No. 07-207234, filed with the Vermont Secretary of State on March 27, 2007.

E06278-67 / #50