UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

IN RE: )
 )
APPLEJACK ART PARTNERS, INC. ) Case No. 10-10911-CAB
 ) *CHAPTER 11 Case*
 Debtor. )

**PLAN OF LIQUIDATION
OF
APPLEJACK ART PARTNERS, INC.
Debtor In Possession**

**Dated May 20, 2011**

Prepared and Submitted by:
APPLEJACK ART PARTNERS, INC.
Debtor in Possession

Jennifer Emens-Butler, Esq.
OBUCHOWSKI & EMENS-BUTLER P.C.
PO Box 60, Rt. 107
Bethel, Vermont VT 05032
(802) 234-6244
Counsel to Debtor in Possession

May 20, 2011

# TABLE OF CONTENTS

ARTICLE 1. - RULES OF INTERPRETATION AND DEFINITIONS ................................... 6
    1.01.    Rules of Interpretation ................................................................. 6
    1.02.    Definitions ...................................................................................... 7
ARTICLE 2. - ADMINISTRATIVE EXPENSES. .................................................................. 12
    2.01.    Administrative Expenses ........................................................... 12
ARTICLE 3. - OTHER PRIORITY CLAIMS other than 507(A)(1) and 507 (a) (8) CLAIMS. . 12
    3.01.    Other Priority Claims ................................................................... 12
ARTICLE 4. - PRIORITY TAX CLAIMS UNDER 507(A)(8)..................................................... 13
    4.01.    Priority Tax Claims ....................................................................... 13
ARTICLE 5. - DESIGNATION OF CLASSES OF CLAIMS OTHER THAN
ADMINISTRATIVE EXPENSES OR PRIORITY CLAIMS. ............................................... 13
    5.01.    Secured Claims. ............................................................................ 13
    Class 1.        Wachovia ................................................................. 13
    Class 2.    VEDA ........................................................................... 13
    Class 3.    Protocol Management Solutions, Ltd. .................... 13
    Class 4.    Brad Butler.................................................................. 13
    Class 5.    Undersecured claims Aaron Young, LV Administrative Services, James
Meserve, and Kellington Arts, LLC. ................................................... 14
    Class 6.     General Unsecured Claims ........................................ 14
    Class 7.    Jack Appelman, Aaron Young, Leonard Stephens ........... 14
ARTICLE 6 - CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN AND
THOSE WHICH ARE IMPAIRED. ....................................................................................... 14
    6.01.    Unimpaired claims ....................................................................... 14
    6.02.    Impaired Claims ............................................................................ 14
ARTICLE 7. - TREATMENT OF CLAIMS ........................................................................... 14
    7.01.    Class 1 – Wachovia (Wells Fargo). ......................................... 14
    7.02.    Class 2 – VEDA. ............................................................................ 15
    7.03    Class 3 – Protocol Management Solutions, Ltd.......................... 15
    7.04    Class 4 –  Brad Butler........................................................................ 16
    7.05    Class 5 – Aaron Young, LV Administrative Services, Inc., James Meserve and
Kellington Arts, LLC ............................................................................... 17
    7.06    Class 6 -- General Unsecured Creditors..................................... 17
    7.07.    Class 7 - Holders of interests ..................................................... 17
ARTICLE 8. - PROVISIONS FOR IMPLEMENTATION OF THE PLAN. ............................ 18
    8.01.    Funding Implementation ............................................................. 18
    8.02.    Plan completion ............................................................................ 18
    8.03.    Plan Fund ....................................................................................... 18
    8.04.    Powers and Duties of the Plan Fund Administrator.................... 19
ARTICLE 9. - MODIFICATION OF THE PLAN...................................................................... 22
    9.01.    Modification of Plan. .................................................................... 22
ARTICLE 10. - EXECUTORY CONTRACTS. ....................................................................... 22
    10.01.    Assumption and Rejection of Unexpired Leases and Executory Contracts. ............ 22

ARTICLE 11. - NOTICE AND RIGHT TO CURE. ................................................................ 23
11.01.    Notice and Right to Cure ................................................................................ 23
ARTICLE 12. - PROVISION REGARDING PAYMENT FOR SERVICES. ........................... 23
12.01.    Payment for services ...................................................................................... 23
ARTICLE 13. - PROVISION FOR RETENTION, ENFORCEMENT, SETTLEMENT OR
ADJUSTMENT OF CLAIMS BELONGING TO THE COMPANY ........................................ 23
13.01.    Retention of claims ......................................................................................... 23
ARTICLE 14 - RESOLUTION OF DISPUTED CLAIMS ...................................................... 23
14.01.    Objections to Claims ....................................................................................... 23
14.02.    Procedure ......................................................................................................... 23
14.03.    Payments and Distributions With Respect to Disputed Claims ...................... 24
14.04.    Timing of Payments and Distributions With Respect to Disputed Claim. ...... 24
ARTICLE 15. - MISCELLANEOUS PROVISIONS. ............................................................. 24
15.01.    Bankruptcy Court to Retain Jurisdiction ........................................................ 24
15.02.    Binding Effect of this Plan .............................................................................. 25
15.03.    Withdrawal of this Plan ................................................................................... 25
15.04.    Final Order ....................................................................................................... 26
15.05.    Method of Notice ............................................................................................. 26
15.06.    Amendments and Modifications to Plan .......................................................... 26
15.07.    Time .................................................................................................................. 26
15.08.    Severability ...................................................................................................... 27
15.09.    Conditions to Modification, Withdrawal and Waiver Rights .......................... 27
14.09.    Setoff Rights Unaffected ................................................................................. 27
14.10.    Manner of Payment .......................................................................................... 27
ARTICLE 15. - PROVISIONS FOR CLASSES OF HOLDERS OF CLAIMS OR INTERESTS
WHICH ARE AFFECTED BY AND DO NOT ACCEPT THE PLAN ...................................... 27
15.01.    Provisions for Non-accepting Classes ............................................................ 27

UNITED STATES BANKRUPTCY COURT

DISTRICT OF VERMONT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| APPLEJACK ART PARTNERS, INC. | ) | CASE NO. 10-10911 |
| | ) | *Chapter 11* |
| | ) | |
| Debtor in Possession. | ) | |

PLAN OF LIQUIDATION
OF
APPLEJACK ART PARTNERS, INC.
Debtor In Possession


APPLEJACK ART PARTNERS, INC. (hereinafter referred to as "the Company" or "Debtor"), the Debtor in the above proceeding, herewith proposes the following Plan of Liquidation.


ARTICLE 1. - RULES OF INTERPRETATION AND DEFINITIONS

1.01.   Rules of Interpretation.   Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine or the neuter.  The words "herein," "hereof," "hereunder" and others of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or affect the interpretation of the Plan.  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) and Section 16.12 hereof shall apply; provided, however, that in the event of any inconsistency, Bankruptcy Rule 9006(a) shall govern.

1.02.  Definitions.  Unless the context requires otherwise, the following words and phrases shall have the meanings set forth below when used in initially-capitalized form in this Plan. All other words or phrases shall have such meanings as set forth in Title 11, United States Code, section 101.

Administrative expense or claim:  Collectively, (a) any cost or expense of administration of the Chapter 11 Case allowable under section 503(b) of the Bankruptcy Code, including, without limitation, the fees and expenses of professionals employed by the Debtor, the Official Committee, to the extent allowed or, as applicable, agreed to by the Debtor and/or Reorganized APPLEJACK ART PARTNERS, INC. pursuant to Section 2.02 of the Plan, and (b) any fees or charges assessed against the Debtor's estate under title 28, United States Code, section 1930.

Affiliate(s):  As defined in section 101 of the Bankruptcy Code.

Allowed:  Subject to Section 7.07 hereof, with respect to Administrative Expenses or Claims, (a) any Administrative Expense or Claim against the Debtor, proof of which is timely filed or by order of the Bankruptcy Court is not or will not be required to be filed, (b) any Claim that has been or is hereafter listed in the Schedules as liquidated in amount and not disputed or contingent, or (c) any Administrative Expense or Claim allowed pursuant to this Plan, and in each such case in (a) and (b) above, as to which either (i) no objection to the allowance thereof has been interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) such an objection is so interposed and the Administrative Expense or Claim shall have been allowed by a Final Order (but only to the extent so allowed).

Allowed claim:  A claim which has been scheduled or filed with the Bankruptcy Court to which no objection to the allowance thereof has been filed within the period of time limitation fixed by the Bankruptcy Code or an Order of the Bankruptcy Court, to which any objection has been determined by an Order or judgment no longer subject to appeal or certiorari proceeding is then pending.

APPLEJACK ART PARTNERS, INC.:     The Debtor in this proceeding.

Ballot:   The form of ballot distributed, together with the Disclosure Statement, to holders of Claims entitled to vote for the purpose of acceptance or rejection of this Plan.

Bankruptcy Code:     Title 11 of the United States Code, as amended from time to time, applicable to the Chapter 11 case.

Bankruptcy Court:   The United States Bankruptcy Court for the District of Vermont and any Court having jurisdiction to hear appeals therefrom.

Bankruptcy Rules:     The Federal Rules of Bankruptcy Procedure, as amended, promulgated under section 2075 of title 28 of the United States Code and the Local Rules of the Bankruptcy Court, as applicable from time to time during the Chapter 11 Case.

Business Day:   Any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

Causes of Action:   Any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether know or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

Claim:   Any right to (a) payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, where such rights arose or accrued prior to the confirmation dated; or (b) A right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, where such rights arose or accrued prior to the confirmation date, (c) a claim arising

under section 502(g) of the Code.

Claims Bar Date: The date fixed by the Bankruptcy Court as the deadline for filing proofs of claim applicable to Creditors whose claims are included in Classes 1, 2, 3, 4, 5 and 6 of the Plan. Such date has been set for November 22, 2010.

Committee(s): Any committee or committees appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Case, including, without limitation, the Official Committee.

Confirmation Date: The date and time on which the Confirmation Order is entered on the docket maintained by the Clerk of the Bankruptcy Court.

Confirmation Order: The Order of the Bankruptcy Court confirming the Plan.

Creditors: Any Entity that is the holder of a Claim against the Debtor that arose on or before the Filing Date or a Claim against the Debtor's estate of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

Debtor or Debtor in Possession: APPLEJACK ART PARTNERS, INC.

Disclosure Statement: The disclosure statement distributed to holders of Claims entitled to vote for the purpose of acceptance or rejection of this Plan in accordance with section 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

Disputed: With respect to Administrative Expenses or Impaired Claims, any Administrative Expense or Impaired Claim that is not yet Allowed or disallowed.

Excluded Assets: Those assets not proposed to be purchased by Protocol, and to be liquidated by way of auction.

Effective Date:  The date upon which the Confirmation Order becomes final and is no longer subject to appeal or certiorari proceeding with respect to such Order.

Entity:  Includes, without limitation, any individual, corporation, limited or general partnership, joint venture, association, joint stock company, estate, entity, trust, trustee, United States trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

Filing Date:  The date on which the Debtor's Petition for Relief was filed, *i.e.*, July 6, 2010.

Final Order:  An order or judgment entered on the docket by the Clerk of the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties (a) that has not been reversed, stayed, modified or amended, (b) as to which no appeal, certiorari proceeding, reargument or other review or rehearing has been requested or is still pending, and (c) as to which the time for filing a notice of appeal or petition for certiorari or request for reargument or further review or rehearing has expired.

General Unsecured Claim:  Any Unsecured Claim against the Debtor, excepting priority claims, priority claims, priority tax claims or administrative claims.  General Unsecured Claims shall include, without limitation, any Unsecured Claims arising from or with respect to the leasing of real estate and equipment, utility service, employee benefits.

Impaired:  Any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

Insider:  As defined in section 101 of the Bankruptcy Code, Jack Appelman, Aaron Young, and any entity in which he holds more than a 10% equity interest and their controlling shareholders shall be deemed to be Insiders for purposes of this Plan.

Interests:  The equity interests in the Debtor including, but not limited to, those

represented by shares of capital stock of the Debtor and any options, warrants, calls, subscriptions or other similar rights or other agreements, commitments or outstanding securities obligating the Debtor to issue, transfer or sell any shares of capital stock of the Debtor.

IRS:  Internal Revenue Service.

Payment Date:  The date following the effective date when payment is to be made under the Plan.  The Payment date will be the 10th day of the month following the effective date, unless otherwise specified.

Person:  An individual, corporation, partnership, joint-venture, trust, estate, unincorporated association or organization, a governmental entity or any agency or political subdivision thereof, or any other entity.

Plan:  The Debtor's Plan of Liquidation, reflected hereby, and any amendments thereof or modifications thereto.

Plan Fund:  As defined in Section 8 of the Plan, all remaining funds held by the Debtor including the Excluded Assets and their proceeds and any potential surplus upon the sale of the Purchased Assets.

Plan Fund Administrator:  The Plan Fund Administrator will receive the proceeds from the Excluded Assets and any remaining proceeds of the Debtor and distribute according to the terms of the Plan.

Priority Claim:  Any Claim, other than a Priority Tax Claim or an Administrative Expense, which is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

Priority Tax Claim:  Any Claim which is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

Proceedings: The Proceedings for Reorganization under Chapter 11 of the Debtor.

Purchased Assets: As further set forth in the Purchase and Sale Agreement, dated January 19, 2011, all assets proposed to be purchased by Protocol Management Solutions, Ltd. by way of credit-bid, except for the Excluded Assets.

Schedules: The Schedules of Assets and Liabilities and the Statement of Affairs for Debtor Engaged in Business, including any amendment thereto, that were required to be filed by the Debtor on or prior to July 21, 2010 or as extended by Court Order.

Ultimately Allowed Claim: Any Disputed Claim to the extent that it becomes an Allowed Claim in accordance with Section 15.01 of this Plan.

Unimpaired Claim: A Claim which is not Impaired.

Unsecured Claim: Any Claim other a Secured Claim, an Administrative Expense, a Priority Claim or a Priority Tax Claim.

ARTICLE 2. - ADMINISTRATIVE EXPENSES.

2.01. Administrative Expenses. Each holder of an Allowed Administrative Expense shall be paid in full upon receipt of the Excluded Asset Proceeds and distribution by the Plan Fund Administrator.

ARTICLE 3. - OTHER PRIORITY CLAIMS other than 507(A)(1) and 507 (a) (8) CLAIMS.

3.01. Other Priority Claims. Except as otherwise agreed between the Debtor and the holder thereof, each claim entitled priority other than 507(a)(1) administrative expenses and 507 (a) (8) Claims noted above, will be paid in full upon receipt of the Excluded Asset Proceeds.

## ARTICLE 4. - PRIORITY TAX CLAIMS UNDER 507(A)(8)

4.01.    Priority Tax Claims. With respect to each Allowed Priority Tax Claim, at the sole option of the Plan Fund Administrator, the holder of an Allowed Priority Tax Claim shall be entitled to receive on account of such Allowed Priority Tax Claim: (a) payment in full, or (b) such treatment as may be agreed between the holder of the claim, the Trustee and the Debtor, provided that such treatment is approved by the Bankruptcy Court.  While there were claims owing to the IRS and the States of New York, Indiana and New Jersey at the time of filing, the Debtor anticipates no Allowed Priority Tax Claims.  All taxes are current.

## ARTICLE 5. - DESIGNATION OF CLASSES OF CLAIMS OTHER THAN ADMINISTRATIVE EXPENSES OR PRIORITY CLAIMS.

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims and Interests.  Administrative Expenses and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code (set forth in Articles 2 and 3 above) have generally not been classified and are excluded from the following classes, unless agreed treatment has been otherwise set forth, in accordance with section 1123(a)(1) of the Bankruptcy Code.  Debtor's Counsel shall file fee applications and have allowed administrative priority claims according to the Court's Orders, which Allowed claims shall be paid in full upon allowance from the Plan Fund.  Debtor's Counsel anticipates requesting no more than $15,000 by way of Fee Application.

5.01.    Secured Claims.


Class 1.          Wachovia

Class 2.          VEDA

Class 3.          Protocol Management Solutions, Ltd.


Class 4.          Brad Butler

Class 5.        Undersecured claims Aaron Young, LV Administrative Services, James
                Meserve, and Kellington Arts, LLC.


6.02.   General Unsecured Claims.


Class 6.         General Unsecured Claims


6.03.        Holder of Interests.


Class 7.        Jack Appelman, Aaron Young, Leonard Stephens


## ARTICLE 6 - CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN AND THOSE WHICH ARE IMPAIRED.

6.01.    Unimpaired claims.  There are no unimpaired classes as all classes are impaired under the Plan.

6.02.    Impaired Claims. Classes 1 through 7 are impaired under the Plan, and the holders of Allowed Claims in such classes are entitled to vote to accept or reject this Plan, however Class 7 shall be deemed to have rejected the Plan and will not be required to vote.


## ARTICLE 7. - TREATMENT OF CLAIMS

7.01.    Class 1 – Wachovia (Wells Fargo).

Wachovia holds a claim against the Debtor in the amount of approximately $2.8 Million, secured by a First and Second Mortgage upon the Debtor's commercial building and lot at its headquarters.  It also holds a claim in the approximate amount of $183,000.00 according to a pre-petition interest rate swap agreement between the parties. The property has been appraised in 2009 as having a value of $3.5 million.  The Debtor will attempt to sell the property over a 6

month marketing period, paying Wachovia interest-only payments of $7,000.00 for the 6 month period. If the property does not sell by October 31, 2011, the Debtor will stipulate to foreclosure judgment in the interest of Wachovia.

The Class 1 claimant is impaired under the Plan, and the legal, equitable and contractual rights of the holder of such claims have been altered.

7.02. Class 2 – VEDA.

VEDA holds a third mortgage against the Debtor's commercial building and lot at its headquarters, second in interest to Wachovia. VEDA's claim, in the amount of approximately $1.2 million, will be paid by way of sale of the property within 6 months as described in Class 1 above. VEDA will receive regular payments in the amount of $6,576 per month until the anticipated closing to Protocol Management Solutions occurs (anticipated to be July 15, 2011) and shall thereafter receive interest-only payments in the amount of $2,210 per month during the remainder of the 6 month sale period. If the property does not sell and/or the purchaser of the building does not assume the VEDA obligation by October 31, 2011, then the remaining unpaid balance owing to VEDA shall be treated as a general unsecured claim and treated according to Class 6.

Class 2 is impaired under the Plan, and the legal, equitable and contractual rights of the holders of such claims are altered.

7.03 Class 3 – Protocol Management Solutions, Ltd.

Post-Petition, Protocol Management Solutions, Ltd. ("Protocol") purchased the debt of the Berkshire Bank, who held a pre-petition claim in the amount of $1,733,624.42 and secured by a first priority security interest in all of the Debtor's personal property. Protocol filed a Notice of Transfer of Claim on December 15, 2010. Protocol's claim will be treated by way of sale of substantially all of the Debtor's assets to Protocol. Protocol has presented an offer to

purchase substantially all of the assets of the Debtor, the Purchased Assets, for the sum of $1.7 Million by way of credit bid. The Plan proposes to sell the Purchased Assets under the terms and conditions of the Purchase and Sale Agreement dated January 19, 2011, attached as Exhibit A, to Protocol, unless objections and/or counter-offers are filed with the Court. Protocol will carve-out or exclude from its credit-bid purchase, those Excluded Assets historically holding a book value of over $1 million but estimated to have a liquidation value of approximately $150,000.00, a listing of which is attached to the Purchase and Sale Agreement. Should an objection be filed, Protocol agrees that the sale to Protocol will be set for hearing with all counter-offers to be heard and considered by the Court. As of the date of this Plan, one proposed bidder is currently reviewing the Debtor's financials and operations. Counter-offers are encouraged. The proposed Plan is being sent to all known or suspected interested parties, as well as all creditors.

The Class 3 claimant is therefore affected and impaired under the Plan, and the legal, equitable and contractual rights of the holder of such claims are altered.

7.04    Class 4 – Brad Butler.

Brad Butler holds a first priority security interest in the assets of AJ Ross Auctions, LLC, of which the Debtor is the 100% sole member. Brad Butler's claim of approximately $1.5 million is secured by the LLC's assets, which have an estimated value of $200,000.00. Brad Butler shall be treated by way of turn over of all of the assets comprising his collateral (all assets of AJ Ross Auctions, LLC) to Mr. Butler. Said assets have been segregated since the commencement of the case and have been prepared for shipment at Mr. Butler's direction and expense. The remaining balance of Mr. Butler's claim shall be treated as a general unsecured creditor according to Class 5.

The Class 4 claimant is therefore affected and impaired under the Plan and the legal, equitable and contractual rights of the holder of such claims are altered.

7.05    Class 5 – Aaron Young, LV Administrative Services, Inc., James Meserve and Kellington Arts, LLC

Aaron Young, LV Administrative Services, Inc., James Meserve and Kellington Arts, LLC are deemed fully unsecured creditors as there remains no value in the collateral available to secure their claims after the interest of Protocol Management Solutions, Ltd.  Should a creditor bid higher than Protocol's $1.7 million credit bid, the next available funds shall be paid to the claimants in Class 5 according to their pre-petition priority positions prior to any distribution to the Plan Fund.  The Debtor does not anticipate distribution directly from the sale to the Class 5 Claimants but will treat Class 5 among the creditors in Class 6 as general unsecured creditors.

The Class 5 claimants are therefore affected and impaired under the Plan, and the legal, equitable and contractual rights of the holders of such claims are altered.

7.06    Class 6 -- General Unsecured Creditors

All Allowed General Unsecured Creditors shall receive, pro rata, proceeds from the sale of the Excluded Assets, and any remaining proceeds from the Purchased Assets, should a final successful bid exceed Protocol's secured claim and those claims listed in Class 5.  This Class includes all unsecured and trade creditors and also shall include remaining amounts owing to the Class 2 and 4 claimants; the members of Class 5; and the Estate of Leonard Stephens.   As a result of pre-petition litigation, it has been determined that Mr. Stephens has no interest in the Debtor, but instead holds a large unsecured claim stemming from a pre-petition stock repurchase agreement.

The Class 6 claimants are therefore affected and impaired under the Plan, and the legal, equitable and contractual rights of the holders of such claims are altered.

7.07.    Class 7 - Holders of interests

This class consists of Jack Appelman and Aaron Young, and the disputed interest of Leonard Stephens, if any. Class 7 will receive no payment under the Plan. The interests are being extinguished under the liquidating plan. Class 7 is presumed to have rejected the Plan and is therefore not required to vote.

ARTICLE 8. - PROVISIONS FOR IMPLEMENTATION OF THE PLAN.

8.01. Funding Implementation. The Plan shall be implemented and funding of payments to creditors called for as soon as practicable on and after the Effective Date under the Plan shall be by way of receipt of the Plan Fund proceeds from the liquidation of the Excluded Assets. It is anticipated that no bid for the Purchased Assets will exceed the offer made by Protocol by way of secured credit bid. Should an auction result in a highest bidder in excess of the Protocol offer, the proceeds from the sale shall be added to the Plan Fund on the Effective Date. The anticipated and immediate funding requirements under the Plan include only minimal funding necessary to maintain the building during the plan period and assist with the auctioneer in liquidating the remaining assets and the distribution of the Plan Fund proceeds. The budget showing required funding and operating costs for the 6 month marketing period is attached as Exhibit B to the Plan.

8.02. Plan completion. The Company anticipates Plan completion by November, 2011, after the 6 month marketing period for the real estate and sale of the Excluded Assets by way of auction. Debt service as it relates to the Treatment of all Classes under the Plan, however, will be paid in accordance with the terms of the Plan.

8.03. Plan Fund. Establishment and Administration of the Plan Fund. The Plan Fund shall consist of the proceeds of the sale of the Excluded Assets and any surplus if the Purchased Assets are purchased by a higher bidder than Protocol Management Solutions. The sale of the Excluded Assets shall be by way of auction to be held by The Hirchak Company as allowed by the Court, and all proceeds shall be turned over to the Plan Fund. The Plan Fund shall be created upon the Effective Date.

8.04.    Powers and Duties of the Plan Fund Administrator.  The Administrator, who is anticipated to be attorney Jim Cormier, shall be appointed in the Confirmation Order and shall serve in accordance with the following terms and conditions:

(i)    The Plan Fund shall remain in the Debtor's federally insured depository institution until the time of distribution.  No separate bond shall be required.

(ii)    The Administrator shall calculate and make the initial distributions to Allowed Claim holders and shall make all supplemental distributions to Allowed Claim holders as required by the Plan.  At such time or times as the Administrator believes in his sole discretion, that sufficient funds are available for a partial distribution, the Administrator shall make disbursements to Allowed Claim Holders in accordance with the provisions Article 7 of the Plan.  The Administrator shall review all claims filed and consult with the Debtor with respect to any pending objections filed or to be filed by the Debtor, prior to making the pro rata distribution.

(iii)    With the exception of any causes of action, rights in action, or claims released, settled or otherwise compromised by the terms of the Plan, the Administrator shall have the sole discretion to initiate and prosecute, or compromise and settle, any and all claims, actions or claims objections.  No claims objection or suit may be filed after 60 days following the Effective Date.  The Debtor anticipates no retained actions.

(iv)    The Plan Fund Administrator shall keep the Debtor and other parties requesting notice in writing fully informed as to matters significantly affecting the Plan Fund, including proposed settlements, litigation and sale of assets within a reasonable period of said significant events.  The Administrator shall have, subject to the requirements of the Plan, final authority on all decisions consistent with the Administrator's disbursing agency role, and such a decision in

accordance with the procedures set forth in the Plan shall confer full and complete authority upon the Plan Administrator, to do and perform all acts, to execute all documents, and to make all payments and disbursements of funds directed to be done, executed, performed, paid and disbursed by the provisions of the Plan.

(v)     A notice list shall be created and maintained by the Plan Administrator consisting of the Debtor and any and all parties in interest who give written notice to the Plan Administrator for inclusion on the notice list.  The Administrator shall give notice to all parties on the list of all matters significantly affecting the Plan Fund, including proposed settlements, litigation and sale of assets.  If no written objection is received by the Plan Administrator from any party within twenty (20) days after service of such notices or on such shorter notice as authorized by the Court, the Plan Fund Administrator may move forward with the proposed action. If an objection is received and cannot be satisfactorily resolved with the objecting party, the Administrator will request that the Court hear and determine the matter. Notice as provided in this section shall be by first class mail.

(vi)     Until distribution, the Administrator shall be authorized to invest all, or any portion of any of the funds in the Plan Fund, in United States Treasury Bills, interest bearing certificates of deposit of a banking institution, or interest bearing savings accounts of a banking institution, but only if the banking institution is included on a list of acceptable banking institutions maintained by the United States Trustee's Office.

(vii)     The Administrator shall keep, or cause to be kept, books and records for the Plan Fund containing a description of the corpus of the Plan Fund, and an accounting of receipts and disbursements, which shall be open to inspection by the Debtor, parties in interest and Claim holders at all reasonable times.

(viii)     The Plan Fund Administrator shall not be liable for any act done or omitted by the Plan Fund Administrator pursuant to his duties hereunder, while

acting in good faith and in the exercise of the his best judgment, excepting that the Administrator may be found personally liable for fraud, gross negligence, willful misconduct, bad faith, self-dealing or grossly negligent breach of duty while acting in his capacity as Administrator.

(ix)     The Plan Fund Administrator shall be required to continue to file monthly operating reports and pay the required US Trustee fees under 28 USC §1930(a)(6) until the issuance of the Final Decree closing the case.  The Plan Administrator may request the issuance of the Final Decree upon Substantial Consummation as defined in 11 USC 1101((2).

(x)     The Plan Fund shall be effective as of the Effective Date and shall remain until substantially all assets have been liquidated and distributed, at which time the Plan Fund will immediately terminate upon the rendering of final accounts and the filing of the final Estate tax return.  The Plan Fund Administrator's duties shall cease upon the termination of the Plan Fund after the final accounting and filing of the final Estate tax returns.

(xi)     On the Effective Date, Five Thousand Dollars ($5,000.00) shall be set aside to defray the costs of services to be rendered in performing the duties hereunder, which $5,000 shall be deemed an administrative expense pursuant to Article 2 of the Plan.  The services rendered and expenses incurred by the Plan Administrator may be charged against the $5,000, and shall be subject to final approval by the Court only if the fees and expenses exceed said amount.  Any and all fees and expenses of the Administrator in excess of the Five Thousand Dollars ($5,000.00), including without limitation, fees and expenses incurred in connection with the settlement of any claims or any other claims or rights in action, or the sale of assets, shall be a charge against the Plan Fund and shall be payable therefrom upon final approval of the Court as a priority over any and all other payments to be made from the Plan Fund, as more specifically provided herein.  The cost of administering the Plan Fund and filing the final tax return for

the Estate shall be paid from the $5,000, including the Administrator's hourly rate of $50/hr. Any fees requested by the Administrator shall be subject to the review and approval of the Court after notice and hearing, unless in the event such Chapter 11 proceeding is closed at which time such fees shall be paid by the Chapter 11 Plan trustee as are reasonable, after notice to upon all parties required under this Section 8.02(v).

## ARTICLE 9. - MODIFICATION OF THE PLAN.

9.01. Modification of Plan. The Company may amend or modify this Plan of Reorganization at any time prior to confirmation, but not in violation of or contradiction with the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and only with the approval of the Court. After confirmation, and before substantial consummation, the Debtor may, with the approval of the Court, modify or amend the Plan, subject to the limits and requirements set forth in 11 USC §1127.

## ARTICLE 10. - EXECUTORY CONTRACTS.

10.01. Assumption and Rejection of Unexpired Leases and Executory Contracts.

(a) All executory contracts, including any licensing, production or distributing agreements are REJECTED as the Company will be liquidating all of its assets. The purchaser of the Purchased Assets will not be restricted from assuming or entering into agreements with any artists upon the Effective Date. The Purchase & Sale Agreement specifically references which contracts shall be purchased and assumed by the proposed purchaser. All pending and existing licensing agreements are proposed to be assumed by Protocol but not artist contracts. If Protocol is the successful bidder, it intends to continue payment upon all licensing/manufacturing agreements and the leases of Intellipack, Inc., CIT Technology Financing Services, Subaru Motor Finance, People's United and Crown Credit Company. All

unexpired leases or executory contracts are REJECTED by the Debtor.

ARTICLE 11. - NOTICE AND RIGHT TO CURE.

11.01.  Notice and Right to Cure. After receiving written notice from the affected party that any payment required or contemplated under this Plan has not been made in a timely manner, the Company has thirty (30) days to cure same before any party may claim default.

ARTICLE 12. - PROVISION REGARDING PAYMENT FOR SERVICES.

12.01. Payment for services. No payments have been made or promised by the Company, to any person for services or for costs and expenses in connection with this Chapter 11 Reorganization case or in connection with the Plan of Reorganization or incident to the Chapter 11 case except those payments which have been disclosed to the Bankruptcy Court.

ARTICLE 13. - PROVISION FOR RETENTION, ENFORCEMENT, SETTLEMENT OR ADJUSTMENT OF CLAIMS BELONGING TO THE COMPANY

13.01.  Retention of claims. The Debtor anticipates no retained claims or causes of action, other than the Debtor and the Administrator's right and duty to resolve all pending claims and any objections thereto.

ARTICLE 14 - RESOLUTION OF DISPUTED CLAIMS

14.01.  Objections to Claims.  Any party in interest may object to an Impaired Claim, other than an Impaired Claim otherwise allowed as provided in this Plan, by filing an objection with the Bankruptcy Court and serving such objection upon the holder of such Claim not later than the last to occur of (a) the 60th day following the Effective Date, (b) 30 days after the filing of the proof of claim of such Claim, or (c) such other date set by order of the Bankruptcy Court (the application for which may be made on an *ex parte* basis), whichever is later.

14.02.  Procedure.  Unless otherwise ordered by the Bankruptcy Court or agreed to by written stipulation of the Debtor, the Plan Fund Administrator, or until the objection of the

Debtor, the Plan Fund Administrator is withdrawn, the Debtor, the Plan Fund Administrator shall litigate the merits of each Disputed Claim until determined by a Final Order; provided, however, subject to the approval of the Bankruptcy Court, if necessary, the Debtor and/or the Plan Fund Administrator, may compromise and settle any objection to any claims. The Debtor anticipates filing no objections to claims.

14.03.  Payments and Distributions With Respect to Disputed Claims.  No payments or distributions shall be made in respect of a Disputed Claim until and unless such Disputed Claim becomes an Ultimately Allowed Claim.

14.04.  Timing of Payments and Distributions With Respect to Disputed Claim.  Subject to the provisions of this Plan, payments and distributions with respect to each Disputed Claim that becomes an Ultimately Allowed Claim, which would have otherwise been made had the Ultimately Allowed Claim been an Allowed Claim on the Effective Date shall be made within thirty (30) days after the date that such Disputed Claim becomes an Ultimately Allowed Claim. Holders of Disputed Claims that become Ultimately Allowed Claims shall be bound, obligated and governed in all respects by the provisions of this Plan.

ARTICLE 15. - MISCELLANEOUS PROVISIONS.

15.01.  Bankruptcy Court to Retain Jurisdiction.  The business and assets of the Debtor shall remain subject to the jurisdiction of the Bankruptcy Court until the Effective Date.  From and after the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the post-confirmation Liquidating Debtor and the Plan Fund, and the Chapter 11 Case to the fullest extent permissible by law, including, but not limited to, for the purposes of determining all disputes and other issues presented by or arising under this Plan including, without limitation, exclusive jurisdiction to:

(a)  determine any and all disputes relating to Claims and Administrative Expenses, including those allowed by operation of the Plan, and the allowance and amount thereof; provided, however, the Bankruptcy Court's jurisdiction shall be concurrent, not exclusive, after

the Effective Date with respect to the enforcement or adjudication of any Unimpaired Claim,

(b)  determine any and all disputes among Creditors with respect to their Claims,

(c)  consider and allow any and all applications for compensation for professional services rendered and disbursements incurred in connection therewith,

(d)  determine any and all applications, motions, adversary proceedings and contested or litigated matters pending on the Effective Date and arising in or related to the Chapter 11 Case or this Plan,

(e)  remedy any defect or omission or reconcile any inconsistency in the Confirmation Order,

(f)  issues such orders, consistent with section 1142 of the Bankruptcy Code, as may be necessary to effectuate the consummation and full and complete implementation of this Plan,

(g)  enforce and interpret any provisions of this plan,

(h)  determine such other matters as may be set forth in the Confirmation Order or that may arise in connection with the implementation of this Plan, and

(i)  determine the final amounts allowable as compensation or reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code.

15.02.  Binding Effect of this Plan.  The provisions of this Plan shall be binding upon and inure to the benefit of the Debtor, any holder of a Claim or Interest, their respective predecessors, successors, assigns, agents, officers and directors and any other Entity affected by this Plan.

15.03.  Withdrawal of this Plan.  Subject to the provisions of Section 16.2 of this Plan, Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to revoke or

withdraw this Plan. If the Debtor revokes or withdraws this Plan or if the Confirmation Date does not occur, then this Plan shall be deemed null and void.

15.04. Final Order. Subject to the provisions of Section 14.02 of this Plan, any requirement in the Plan for a Final Order may be waived by the Debtor upon written notice to the Bankruptcy Court; provided, however, that nothing contained herein shall prejudice the right of any party in interest to seek a stay pending appeal with respect to such Final Order.

15.05. Method of Notice. All notices required to be given under this Plan, if any, shall be in writing and shall be sent by first class mail, postage prepaid, or by overnight courier:

If to the Debtor to:

APPLEJACK ART PARTNERS, INC.
PO Box 1527; 50 Wallace Road
Manchester, VT 05255

with copies to:

Jennifer Emens-Butler, Esq.
OBUCHOWSKI & EMENS-BUTLER P.C.
PO Box 60, Route 107
Bethel, VT 05032

Any of the above may, from time to time, change its address for future notices and other communications hereunder by filing a notice of the change of address with the Bankruptcy Court. Any and all notices given under this Plan shall be effective when received.

15.06. Amendments and Modifications to Plan. Subject to the provisions of this Plan to the contrary, this Plan may be altered, amended or modified by the Debtor, before or after the Confirmation Date, only as provided in section 1127 of the Bankruptcy Code.

15.07. Time. Unless otherwise specified herein, in computing any period time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included. The last day of the period so computed shall included, unless

it is not a Business Day, in which event the period runs until the end of the next succeeding day which is a Business Day.

15.08.  Severability.  If any provision of the Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provisions of the Plan.  Subject to the provisions to the contrary of this Plan, to the extent any provision of the Plan would, by its inclusion in the Plan, prevent or preclude the Bankruptcy Court from entering the Confirmation Order, the Bankruptcy Court, on the request of the Debtor, may modify or amend such provision, in whole or in part, as necessary to cure any defect or remove any impediment to the confirmation of the Plan existing by reason of such provision.

15.09.  Conditions to Modification, Withdrawal and Waiver Rights.  Notwithstanding any provisions contained herein to the contrary, the Debtor may:  (a) withdraw the Plan after having first given four (4) Business Days notice in writing to counsel for the 20 largest creditors and parties in interest (to be served via facsimile and overnight delivery) of the date of the proposed withdrawal and the reason therefor; provided, however, the 20 largest creditors may object to such withdrawal and seek an order of the Bankruptcy Court preventing the occurrence thereof; or (b) amend or modify the Plan only as set forth in 11 USC §1127 .

14.09.  Setoff Rights Unaffected.  Except as otherwise expressly provided in this Plan, this Plan is not intended to, and shall not, abrogate or impair any rights of setoff of the Debtor.

14.10.  Manner of Payment.  Payments provided hereunder may be made, at the option of the Debtor or the Administrator, in cash, by wire transfer or by check drawn on any money market center bank.

ARTICLE 15. - PROVISIONS FOR CLASSES OF HOLDERS OF CLAIMS OR INTERESTS WHICH ARE AFFECTED BY AND DO NOT ACCEPT THE PLAN

15.01.  Provisions for Non-accepting Classes. Any class of holders of claims or interest which is affected by and does not accept the Plan in accordance with the provisions of section 1126 of the Bankruptcy Code shall be treated in a fair and equitable fashion as provided by the

provisions of section 1129(b) of the Bankruptcy Code.


Dated at Manchester, VT this _____ day of May, 2011.


                                        APPLEJACK ART PARTNERS, INC.
                                            Debtor-In-Possession


                                        By:    _____
                                               Jack Appelman, President


_/s/ Jennifer Emens-Butler_____
Jennifer Emens-Butler, Esq.
Counsel to Debtor in Possession
OBUCHOWSKI & EMENS-BUTLER, P.C.
PO Box 60, Route 107
Bethel, Vermont 05032
(802) 234-6244
jennifer@oeblaw.com

provisions of section 1129(b) of the Bankruptcy Code.

Dated at Manchester, VT this ___20th___ day of May, 2011.

APPLEJACK ART PARTNERS, INC.
Debtor-In-Possession

By: _____
Jack Appelman, President

/s/ Jennifer Emens-Butler
Jennifer Emens-Butler, Esq.
Counsel to Debtor in Possession
OBUCHOWSKI & EMENS-BUTLER, P.C.
PO Box 60, Route 107
Bethel, Vermont 05032
(802) 234-6244
jennifer@oeblaw.com